J. S38011/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JONATHAN F. HARRIS, | : | No. 2693 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, August 20, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0409431-2002

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 21, 2016**

Jonathan F. Harris appeals ***pro se*** from the order entered in the Court of Common Pleas of Philadelphia County that dismissed his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA").  We affirm.

A previous panel of this court aptly recognized the complicated procedural history of this case and set forth the following:

> The facts of this case are not nearly as complicated as its procedural history.  The Commonwealth alleged that Appellant, a.k.a. "Johnny Cane," and his coconspirator, Shaun "Boo" Cherry, confronted victims Leon Bryant and Joseph "Mackie" Pratt outside the Gold Coast bar in West Philadelphia during the early morning hours of September 23, 2001.  Appellant believed that Pratt had sucker-punched his friend.  He approached Bryant's vehicle, where Bryant sat in the driver's seat and Pratt sat in the passenger seat.  After a

brief verbal exchange, Appellant jumped on top of the hood of the car and fired numerous shots from a .357-caliber semiautomatic handgun into the vehicle. Simultaneously, Cherry fired his .45-caliber semiautomatic handgun at the vehicle from the side. Seven shots struck Bryant. The vehicle rolled slowly down Lancaster Avenue until a witness, Antwain Ball, reached into the vehicle and turned off the engine. Ball and his sister tried unsuccessfully to speak with Bryant but he soon lost consciousness. Bryant was pronounced dead upon his arrival at the hospital. Both Cherry and Pratt were shot and killed in separate incidents before they were questioned by police regarding this shooting.

Appellant was initially tried on August 4, 2003, for the murder of Bryant, the attempted murder of Pratt, and several other lesser crimes including possessing an instrument of crime (PIC), recklessly endangering Pratt (REAP), and criminal conspiracy. Appellant's first trial, in which he acted *pro se* with the assistance of back-up counsel, resulted in his acquittals for first degree murder and voluntary manslaughter. However, the jury failed to reach a verdict on attempted murder, third degree murder, PIC, criminal conspiracy, and REAP.

Appellant was retried on December 15, 2003, when he again acted *pro se* with the assistance of back-up counsel. The second jury convicted Appellant of PIC and criminal conspiracy and acquitted him of REAP and attempted murder. However, the second jury deadlocked on third degree murder. Following that verdict, the trial court sentenced Appellant to 10 - 20 years' incarceration for criminal conspiracy and a consecutive term of 2½ - 5 years' incarceration for PIC, and also granted the Commonwealth's motion to *nolle pros* the third degree murder charge.

Appellant appealed and, in a memorandum decision, this Court awarded Appellant a new trial after determining that the trial court had conducted an inadequate colloquy regarding Appellant's

decision to represent himself at the second trial. ***Commonwealth v. Harris***, 885 A.2d 576 (Pa. Super. 2005) (unpublished memorandum)[, ***appeal denied***, 987 A.2d 451 (Pa. 2006)]. In response to this Court's granting Appellant a new trial and vacating the judgment of sentence, the Commonwealth successfully moved to withdraw the ***nolle pros*** regarding the charge of third degree murder.

Thus, Appellant's third trial concerned the reinstituted charge of third degree murder, PIC, and criminal conspiracy. On January 25, 2007, the jury convicted Appellant of all three offenses. On January 30, 2007, the trial court sentenced Appellant to 20 - 40 years' incarceration for third degree murder, a consecutive term of 20 - 40 years' incarceration for criminal conspiracy, and a consecutive term of 2½ - 5 years' incarceration for PIC. Appellant filed a counseled appeal, and this Court affirmed his judgment of sentence on August 11, 2009. ***Commonwealth v. Harris***, 979 A.2d 387 (Pa.Super. 2009). Appellant filed a petition for allowance of appeal to our Supreme Court but ultimately abandoned that appeal when he withdrew his petition before it was decided.

On March 4, 2010, Appellant filed a timely PCRA petition, his first, alleging his appellate counsel (following his third trial), Attorney Joseph S. O'Keefe, provided ineffective[] assistance of counsel (IAC). Appellant again sought to act ***pro se***. Therefore, the PCRA court conducted a ***Grazier***[Footnote 1] hearing on March 4, 2010. The court determined that Appellant knowingly, voluntarily, and intelligently decided to represent himself. The PCRA court then conducted a hearing on November 27, 2012. However, that hearing was limited to argument concerning Appellant's satisfaction of the prejudice prong pertaining to one of his IAC claims. No evidence was admitted and Attorney O'Keefe did not provide testimony. On January 11, 2013, the PCRA court issued an order denying Appellant's petition for relief. Appellant filed

a timely appeal from that order, and now presents the following questions for our review:

> [Footnote 1] **Commonwealth v. Grazier**, 713 A.2d 81, 82 (Pa. 1998) ("When a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one.").

> [1]. WAS APPELLANT DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE [ASSISTANCE OF] COUNSEL, DUE TO APPELLATE COUNSEL'S FAILURE TO RAISE ON DIRECT APPEAL THE ISSUE OF COLLATERAL ESTOPPEL PURSUANT TO **ASHE V. SWENSON**,[Footnote 2] DENYING APPELLANT HIS FIFTH AMENDMENT . . . DOUBLE JEOPARDY [RIGHT]?

>> [Footnote 2] **Ashe v. Swenson**, 397 U.S. 436 (1970).

> 2. WAS APPELLANT DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE [ASSISTANCE OF] COUNSEL, DUE TO APPELLATE COUNSEL'S FAILURE TO RAISE ON DIRECT APPEAL . . . THAT APPELLANT WAS DENIED HIS SPEEDY TRIAL RIGHTS?

> 3. DID THE PCRA COURT ERR BY CONCLUDING THAT THE EVIDENCE WAS OVERWHELMING TO DENY APPELLANT RELIEF THAT HIS DUE PROCESS RIGHTS WERE VIOLATED, WHEN THE TRIAL COURT DENIED APPELLANT THE OPPORTUNITY TO PRESENT PORTIONS OF APPELLANT'S PRIOR TESTIMONY . . . [THAT WOULD] . . . REBUT THE

> MISLEADING PORTIONS READ IN BY THE COMMONWEALTH?
>
> 4. DID THE PCRA COURT ERR BY FAILING TO ADDRESS APPELLANT'S THIRD AMENDED PETITION?

Appellant's Brief [filed August 28, 2013] at 4.

**Commonwealth v. Harris**, No. 357 EDA 2013, unpublished memorandum at 2-5 (Pa.Super. filed April 15, 2014).

This court then disposed of the fourth issue that appellant raised as follows:

> Appellant asserts that the PCRA court erred when it failed to address matters raised in his third amended PCRA petition (hereinafter "third amendment"). Appellant believes that, because he filed his third amendment before the PCRA court entered the order denying him PCRA relief, the PCRA court was obligated to address the additional matters raised therein. However, the record indicates that this issue was not presented in Appellant's Pa.R.A.P. 1925(b) statement of errors complained of on appeal. As such, we conclude that Appellant has waived this claim. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

**Id.** at 6.

This court then determined that appellant's three remaining issues raised ineffective assistance of direct appeal counsel claims. Because direct appeal counsel did not testify at the November 27, 2012 PCRA hearing, this court vacated the PCRA court's January 11, 2013 order denying appellant

- 5 -

PCRA relief on his ineffective assistance claims and remanded for an evidentiary hearing so that direct appeal counsel could testify. **See id.**

In accordance with this court's instructions, the PCRA court held an evidentiary hearing on July 22, 2014, during which direct appeal counsel, Scott O'Keefe, testified.[1]

The record further reflects that on August 20, 2015, the PCRA court dismissed appellant's PCRA petition for lack of merit. On August 28, 2015, appellant filed a notice of appeal to this court. On September 2, 2015, the PCRA court ordered appellant to file a Pa.R.A.P. 1925(b) statement. On September 26, 2015, appellant filed a timely Rule 1925(b) statement.

At this point, we note that the appeal of the January 11, 2013 order was docketed in this court at No. 357 EDA 2013. After this court vacated that order and remanded for an evidentiary hearing on April 15, 2014, the prothonotary of this court remitted the record to the PCRA court and closed docket No. 357 EDA 2013. The fact that this court vacated the January 11, 2013 order and remanded for an evidentiary hearing so that direct appeal counsel could testify regarding appellant's ineffective assistance claims did not, however, result in appellant being given the opportunity to raise new issues or to re-litigate the issue that the previous panel of this court decided.

---

[1] We note that in November 2013, direct appeal counsel was elected to the Philadelphia Court of Common Pleas and is now Judge Scott O'Keefe.

- 6 -

Therefore, prior to addressing the issues properly before us, we note that appellant has reframed his issues as follows:

> 1. WAS APPELLANT DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL, DUE TO APPELLATE COUNSEL'S FAILURE TO PROPERLY RAISE ON DIRECT APPEAL THE ISSUE OF COLLATERAL ESTOPPEL PURSUANT TO ***ASHE V. SWENSON*** DENYING APPELLANT HIS FIFTH AMENDMENT RIGHT TO DOUBLE JEOPARDY?
>
> 2. WAS APPELLANT DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL, DUE TO APPELLATE COUNSEL'S FAILURE TO RAISE ON DIRECT APPEAL, THAT APPELLANT WAS DENIED HIS SPEEDY TRIAL RIGHTS, WHEN THE COMMONWEALTH ***NOLLE PROSSE*** [sic] THE CHARGE OF THIRD DEGREE MURDER AFTER A MISTRIAL ON THE CHARGE THEN RE-OPENED IT THREE YEARS LATER?
>
> 3. WAS APPELLANT DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL, DUE TO APPELLATE COUNSEL'S FAILURE TO RAISE ON DIRECT APPEAL THE TRIAL COURT'S FAILURE TO ALLOW APPELLANT TO READ CERTAIN PORTIONS OF PRIOR TESTIMONY TO REBUT PORTIONS READ BY THE COMMONWEALTH?
>
> 4. DID THE PCRA COURT ERR BY FAILING TO CONSIDER THAT IT WAS "GOVERNMENTAL INTERFERENCE" THAT PRECLUDED APPELLANT FROM RAISING IN THE PRIOR 1925(b) THAT IT WAS ERROR FOR THE PCRA COURT TO NOT CONSIDER APPELLANT'S THIRD AMENDED PETITION?

Appellant's brief filed 10/26/15 at 4.

In PCRA appeals, our scope of review "is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." *Commonwealth v. Sam*, 952 A.2d 565, 573 (Pa. 2008) (internal quotation omitted). Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. *Commonwealth v. Pitts*, 981 A.2d 875, 878 (Pa. 2009). We defer to the PCRA court's factual findings and credibility determinations supported by the record. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). In contrast, we review the PCRA court's legal conclusions *de novo*. *Id.*

Appellant's issues assert ineffective assistance of appellate counsel.

> In evaluating claims of ineffective assistance of counsel, we presume that counsel is effective. *Commonwealth v. Rollins*, 558 Pa. 532, 738 A.2d 435, 441 (Pa. 1999). To overcome this presumption, Appellant must establish three factors. First, that the underlying claim has arguable merit. *See Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 356 (Pa. 1995). Second, that counsel had no reasonable basis for his action or inaction. *Id.* In determining whether counsel's action was reasonable, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. *See Rollins*, 738 A.2d at 441; *Commonwealth v. (Charles) Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (Pa. 1987). Finally, "Appellant must establish that he has been prejudiced by counsel's ineffectiveness; in order to meet this burden, he must show that 'but for the act or omission in question, the outcome of the proceedings would have been different.'" *See Rollins*, 738 A.2d

at 441 (quoting ***Travaglia***, 661 A.2d at 357). A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs. ***Commonwealth v. (Michael) Pierce***, 567 Pa. 186, 786 A.2d 203, 221-22 (Pa. 2001); ***Commonwealth v. Basemore***, 560 Pa. 258, 744 A.2d 717, 738 n.23 (Pa. 2000); ***Commonwealth v. Albrecht***, 554 Pa. 31, 720 A.2d 693, 701 (Pa. 1998) ("If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met."). In the context of a PCRA proceeding, Appellant must establish that the ineffective assistance of counsel was of the type "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt [or] innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). ***See also (Michael) Pierce***, 786 A.2d at 221-22; ***Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326, 333 (Pa. 1999).

***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007).

At the outset, we direct appellant's attention to the Pennsylvania Rules of Appellate Procedure which limit a principal brief to 14,000 words, unless the brief does not exceed 30 pages. Pa.R.A.P. 2135(a)(1). Where the brief exceeds 30 pages, a certificate of compliance with the 14,000 word-count limit must be filed. ***Id.*** Here, appellant's brief spans 79 pages, exclusive of attachments, and fails to include a certificate of compliance. Pa.R.A.P. 2101 underscores the seriousness with which this court takes deviations from procedural rules, as it permits us to quash or dismiss an appeal for procedural noncompliance. Although we will address appellant's issues, we

admonish appellant for his failure to follow the rules set forth by our supreme court. A **pro se** defendant is subject to the same procedural rules as a counseled defendant. **Commonwealth v. Harris**, 979 A.2d 387, 397 (Pa.Super. 2009).

Appellant first complains that direct appeal counsel was ineffective for failing to raise collateral estoppel on direct appeal. Specifically, appellant complains that because he was acquitted in his second trial of attempted murder and REAP pertaining to Joseph Pratt, the Commonwealth was precluded from using any evidence relating to Pratt, including evidence that Pratt was in the vehicle when appellant shot the victim to death.[2]

---

[2] The record reflects, and appellant admits, that the trial court precluded the Commonwealth from presenting evidence or arguing that appellant attempted to murder Pratt. (Appellant's brief at 15.) Nevertheless, appellant claims that his acquittals of attempted murder and REAP with respect to Pratt mean that "the jury found that Pratt wasn't in the car, or at the scene of the crime," and therefore, evidence of Pratt being in the car was barred by collateral estoppel. (**Id.** at 18.) Appellant is mistaken.

> In the criminal law arena, the difficulty in applying collateral estoppel typically lies in deciding whether or to what extent an acquittal can be interpreted in a manner that affects future proceedings, that is, whether it reflects a definitive finding respecting a material element of the prosecution's subsequent case. We ask whether the fact-finder, in rendering an acquittal in a prior proceeding, could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. If the verdict must have been based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge, the Commonwealth is precluded from attempting to relitigate that issue in an effort to resolve it in a

> contrary way. Conversely, where an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining charge, the Commonwealth is free to commence with trial as it wishes.
>
> The court is not, however, required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged, as appellant would have preferred.

***Commonwealth v. Rolan***, 964 A.2d 398, 412 (Pa.Super. 2008) (internal citations omitted).

At that third trial, the trial court precluded the Commonwealth from introducing evidence or arguing that appellant attempted to kill Pratt because appellant was acquitted of the attempted murder and reckless endangerment of Pratt. (Notes of testimony, 1/22/07 at 5-10.) The trial court, however, permitted the prosecution to present evidence that Pratt was in the car with the victim at the time appellant killed the victim in the form of appellant's prior testimony.

The issues to be resolved by the fact-finder at the third trial were whether appellant murdered the victim with the requisite malice, whether appellant engaged in a criminal conspiracy, and whether appellant possessed an instrument of crime. "Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." ***Commonwealth v. Kling***, 731 A.2d 145, 147 (Pa. Super. 1999), ***appeal denied***, 745 A.2d 1219 (1999), citing 18 Pa.C.S.A.§ 2502(c). "Malice exists where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." ***Id.*** at 147-148 (citation and quotation marks omitted). ***Commonwealth v. Tielsch***, 934 A.2d 81, 94 (Pa.Super. 2007). "A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he . . . agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit

The record, however, belies appellant's claim. The record reflects that direct appeal counsel raised the collateral estoppel claim by alleging and arguing that the trial court erred when it permitted the Commonwealth to read appellant's prior testimony concerning Joseph Pratt to the jury, as well as when it permitted the Commonwealth to present evidence that Pratt was in the victim's vehicle when appellant shot the victim to death. (Docket #53.) On direct appeal, this court found that because appellant failed to support his collateral estoppel claim with citation to the record, appellant waived the issue. **Harris**, 979 A.2d at 396. The fact that this court found waiver of that issue, however, in no way supports the conclusion that direct appeal counsel never raised the issue. At the evidentiary hearing, direct

---

such crime." 18 Pa.C.S.A. § 903(a)(1). Finally, a person is guilty of PIC "if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a).

Here, the fact that Pratt was sitting in the car with the victim when appellant shot the victim to death had no bearing on the issues of whether appellant killed the victim with the requisite malice, engaged in a conspiracy with Shaun "Boo" Cherry to kill victim, and/or possessed a firearm with intent to use it to shoot the victim to death. Moreover, evidence concerning Pratt's presence in the vehicle at the time appellant shot the victim to death was part of the history and natural development of the case. **See Commonwealth v. Lark**, 543 A.2d 491, 501 (Pa. 1988) (recognizing that, despite a defendant's preference to the contrary, courts are not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues to be decided and where they form part of the history and natural development of the events and offenses for which the defendant is charged). Therefore, even assuming that direct appeal counsel did not raise this issue on direct appeal, it would nevertheless fail for lack of arguable merit.

appeal counsel testified that he raised the collateral estoppel issue because appellant "demanded" it be raised, but that he did not believe it would be successful on appeal. (Notes of testimony, 7/22/14 at 6-8). We agree and, therefore, find no prejudice to appellant.

Appellant next complains that direct appeal counsel was ineffective for failing to raise a claim that appellant was denied his right to a speedy trial when the Commonwealth **nolle prossed** the third-degree murder charge and re-opened it three years later.

A **nolle prosequi** is the Commonwealth's voluntary withdrawal of a particular bill of information. Pa.R.Crim.P. 585; **see also Commonwealth v. Goldman**, 70 A.3d 874, 878 (Pa.Super. 2013).

The relevant portion of the speedy trial rule requires that,

> [e]xcept in cases in which the defendant is not entitled to release on bail as provided by law, no defendant shall be held in pretrial incarceration in excess of . . . 120 days from the date of the written notice from the appellate court to the parties that the record was remanded.

Pa.R.Crim.P. 600(B)(5).

When determining whether Rule 600 requires dismissal of charges against a defendant, courts utilize a three-step analysis.

> The first step in determining whether a technical violation of Rule 600 [. . .] has occurred is to calculate the "mechanical run date." The mechanical run date is the date by which trial must commence under the relevant procedural rule. [T]he mechanical run date is ascertained by counting the number of days from the triggering event -- **e.g.**,

- 13 -

> the date on which . . . the criminal complaint was filed -- to the date on which trial must commence under Rule [600].

***Commonwealth v. Preston***, 904 A.2d 1, 11 (Pa.Super. 2006) (internal citations omitted), ***appeal denied***, 916 A.2d 632 (Pa. 2007).  In the second step, we must "determine whether any excludable time exists pursuant to Rule 600(C)."  ***Commonwealth v. Ramos***, 936 A.2d 1097, 1103 (Pa.Super. 2007), ***appeal denied***, 948 A.2d 803 (Pa. 2008).  Then, in the third step, we add all excludable or excusable time to the mechanical run date, which provides the adjusted run date.  ***Id.***

Furthermore, delays not attributable to a defendant but where the Commonwealth is found to have acted with due diligence in attempting to commence a timely trial but was prevented by circumstances beyond its control, are considered excusable time and likewise added to the mechanical run date.  ***Commonwealth v. Hunt***, 858 A.2d 1234, 1241 (Pa.Super. 2004) (***en banc***), ***appeal denied***, 875 A.2d 1073 (Pa. 2005).  Periods of delay caused by the defendant, however, are excludable from the adjusted run date calculation.  ***See id.***; ***see also*** Pa.R.Crim.P. 600(C)(2).

Here, the record reflects that the Commonwealth ***nolle prossed*** the third-degree murder charge after appellant's convictions of conspiracy and PIC in his second trial because it was satisfied with the sentence imposed.  Appellant then filed a direct appeal to this court.  This court vacated appellant's judgment of sentence and remanded for a new trial on

September 1, 2005. The Commonwealth then filed a petition for allowance of appeal to our supreme court, which was denied on March 8, 2006. The record further reflects that on April 5, 2006, the trial court took jurisdiction and conducted a pre-trial hearing on April 25, 2006. At that hearing, the trial court set a June 5, 2006 trial date with an alternative, next-available date of January 16, 2007. (Notes of testimony, 4/25/06 at 29-31.)

The record further reflects that on May 1, 2006, appellant filed a motion for recusal of the trial court. On May 17, 2006, appellant filed a motion to bar the Commonwealth by collateral estoppel from advancing any theory or evidence of a dispute between appellant and Pratt. On June 1, 2006, appellant filed a motion to qualify an expert. Also on June 1, 2006, appellant filed a memorandum of law in support of bail, a motion to proceed *pro se*, and a motion for informal defense request for discovery. On June 21, 2006, appellant filed a motion for a court-appointed expert witness. In order to address all of appellant's motions, the trial court rescheduled the trial to begin on January 16, 2007. (PCRA court opinion, 6/27/13 at 9-10.)

At the PCRA evidentiary hearing, and consistent with the record, direct appeal counsel testified that there was no speedy trial rule violation under Rule 600. (Notes of testimony, 7/22/14 at 8.) Direct appeal counsel explained that the Commonwealth withdrew the *nolle pros*, not to violate any speedy trial rules, but because this court granted appellant a new trial. (*Id.* at 9.) Additionally, when asked by the PCRA court what he had done to

determine the non-viability of a speedy trial violation claim, direct appeal counsel testified:

> I reviewed all of the docket entries and the Quarter Sessions file and determined that he was tried within the amount of time, excluding -- originally this was set for trial, I believe, in July and then -- I'm not -- then [appellant] filed several motions that had to be resolved and the case was given the next available date in front of Judge Hughes, which was January. It was not a lack of due diligence on the part of the Commonwealth.

*Id.* at 10-11.

Consequently, direct appeal counsel then concluded that no evidence existed to support the conclusion that the Commonwealth violated the speedy trial rule, and therefore, the claim was frivolous because the delay was the result of appellant's "own doing." (*Id.* at 34-36.) Therefore, this claim lacks arguable merit.

Appellant next complains that direct appeal counsel was ineffective for failing to challenge the trial court's ruling to exclude a portion of appellant's prior testimony from being read to the jury in order to rebut portions of appellant's testimony that the Commonwealth was permitted to present.

At the PCRA hearing, direct appeal counsel explained the issue and his strategy, as follows:

> THE WITNESS: At the rebuttal stage, after [appellant] had finished his case, the Commonwealth went to put in part of a bail petition and also prior testimony, I believe, from the second trial. I'm not sure if it was the second or the first. [Appellant] objected, but there was a long and lengthy argument

on the record about [the Commonwealth] putting in only a portion of the bail petition and not all of it. It was a very short and brief argument by [appellant] concerning his prior testimony at an earlier trial and whether or not the assistant district attorney was only going to put in a portion of it, rather than all of it. The judge ruled that none of it was coming in, unless [appellant] took the stand in his own defense.

THE COURT: And this was the underlying nature of this testimony, was used by [the Commonwealth] in an attempt to show that [appellant] had been threatening a witness or intimidating a witness, so that that witness would not continue to offer testimony against him, right?

THE WITNESS: Correct.

THE COURT: Okay.

That is an issue which, of course, was covered in this Court's opinion, originally, dismissing the petition.

Let me ask you this, if I may:

Based on your review of the record of the third trial,[3] if [the trial court] had done the right thing by either excluding all of the bail petition and all of [appellant's] prior testimony or if she was going to admit it by admitting it all in total, admitting the entire bail petition and everything he said about the subject we were just talking about, do you have a view, as an experienced criminal -- formally an experienced criminal defense lawyer,[4] now a criminal trial judge, as to the likelihood of whether or

---

[3] In its initial opinion prior to this court's remand, the PCRA court determined that the trial court's exclusion of the prior testimony constituted harmless error. (PCRA court opinion, 6/27/13 at 15-16.)

[4] Direct appeal counsel testified that he practiced criminal defense law for 34 years before his election to the bench. (Notes of testimony, 7/22/14 at 28.)

not that correct ruling would have resulted in a different verdict?

THE WITNESS: I do not believe it would have been a different verdict. I believe if all the materials had gone in, that he would have been convicted quicker.

One of the things the bail petition specifically would have had that he previously [had] been charged of first-degree murder, which the jury did not know and also would have been in jail the entire time, since the time of his arrest, which the jury did not know.

As to the other testimony, I believe that the testimony he presented, the defense had presented at the second trial, was substantially different than the defense he presented at the third trial.

I think if all of that would have come in, the jury would have dismissed his argument as frivolous from the beginning.

Notes of testimony, 7/22/14 at 36-39.

Direct appeal counsel further explained that although he could have raised this issue separately, he determined that the strongest issue on direct appeal was the trial court's refusal to recuse itself. (*Id.* at 22.) As such, direct appeal counsel included the trial court's adverse evidentiary rulings within the recusal issue that he raised on direct appeal. After a careful review of the record, we conclude that direct appeal counsel had a reasonable basis for including adverse evidentiary rulings in the issue that he determined was the most likely to prevail, which was recusal. Although our inquiry ends there, we note that appellant claims that he suffered

prejudice because if not for direct appeal counsel's failure to raise this issue on direct appeal, "the outcome on [d]irect [a]ppeal would've been different." (Appellant's brief at 76.) Appellant, however, entirely fails to demonstrate how counsel's strategy so undermined the truth-determining process so that no reliable adjudication of his guilt or innocence could have taken place.

Appellant finally complains that the PCRA court erred in refusing to address matters raised in his third PCRA petition. This court previously determined that appellant waived this issue for failing to include it in his Rule 1925(b) statement. *Harris*, 102 A.3d at 532. Although appellant attempts to resuscitate this issue by claiming that his failure to do so resulted from "government interference" in that "once [the Superior Court] vacated the PCRA court's order and remanded the case for an evidentiary hearing, and jurisdiction was relinquished[,] the PCRA [court] had jurisdiction to consider the Third Amended Petition,"[5] the issue was decided against appellant and is legally incapable of resuscitation.[6]

Order affirmed.

---

[5] Appellant's brief at 78.

[6] We further note that appellant cites no legal support for his erroneous contention that remand gave the PCRA court jurisdiction to entertain a claim that this court determined that appellant waived.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2016